UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MONICA NEWMAN, individually and on behalf of all similarly situated; MATTHEW KEITH DOUGLAS, individually and on behalf of all similarly situated; and RUBY JUDINE MALMAN, individually and on behalf of all similarly situated,<br><br>                Plaintiffs,<br><br>v.<br><br>CITY OF PAYETTE, an Idaho municipal corporation; CITY OF FRUITLAND, an Idaho municipal corporation,<br><br>                Defendants. | Case No. 1:15-cv-00145-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

**INTRODUCTION**

Currently pending before the Court is Plaintiffs' motion for partial summary judgment (Dkt. 25), filed July 10, 2015. Plaintiffs are dog owners seeking retrospective and prospective injunctive relief, on behalf of themselves and all those similarly situated, against the cities of Fruitland and Payette from enforcement of the cities' respective pit

**MEMORANDUM DECISION AND ORDER - 1**

bull ordinances. Plaintiffs seek also a declaratory judgment finding portions of the ordinances unconstitutional.

During the scheduling conference, the Court and the parties determined that this matter might benefit from the early filing of a partial motion for summary judgment by Plaintiffs, with a second round of motions, if necessary, to be filed by December 31, 2015. (Dkt. 19.) On October 6, 2015, the Court conducted a hearing on Plaintiffs' motion.

The motion before the Court is limited to the procedural due process claims asserted in Sections X and XIII of the Second Amended Complaint (Dkt. 24.) Plaintiffs contend the city ordinances applicable to the licensing of pit bull dogs enacted by the City of Payette and the City of Fruitland are unconstitutional. In response, Defendants assert Plaintiffs lack standing, and even if they do have standing, each city has a legitimate basis upon which to enact its ordinance. Because of the nature of the arguments, the Court will discuss the facts and analyze the standing argument first, to be followed by the relevant facts and analysis of the constitutional claims at issue with the pending motion.

## ANALYSIS

### 1.  Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;

MEMORANDUM DECISION AND ORDER  - 2

the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Material facts are those which may affect the outcome of the case. *See id.* at 248.

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. *Id.* at 248, 255. Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or depositions excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57 (1986). The non-moving party must go beyond the pleadings and show by its "affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

As a preliminary matter, Plaintiffs argue Defendants have improperly raised lack of standing in response to their summary judgment motion, because Defendants filed

**MEMORANDUM DECISION AND ORDER  - 3**

neither a cross motion for summary judgment nor a motion to dismiss. However, Plaintiffs have cited no authority precluding the Court from considering the cities' arguments in response to Plaintiffs' motion. *See, e.g., Cal. Parents for Equalization of Educational Materials v. Noonan*, 600 F.Supp.2d 1088, 1106 (E.D. Cal. 2009) (considering first whether plaintiffs had organizational standing when defendants raised the issue in response to plaintiffs' motion for summary judgment). Further, Plaintiffs' arguments raise form over function. Nothing prevents this Court from considering Plaintiffs' standing, because establishing standing is an essential part of the case or controversy requirement of Article III of the United States Constitution. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Standing is a component of the Court's jurisdiction, and the Court is obliged to consider it *sua sponte* to ensure the existence of an Article III case or controversy. *See Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) (court has an obligation to satisfy itself of its jurisdiction). The Court is unable to resolve Plaintiffs' summary judgment motion unless they have standing to pursue their claims. And, if it appears Plaintiffs' standing does not adequately appear from the materials of record, their claims must be dismissed. *Warth v. Seldin*, 422 U.S. 490, 502 (1975).

Plaintiffs argue also the cities' failure to file a separate statement of material facts that they contend are not in dispute should result in the Court disregarding the cities' responses. While Plaintiffs are technically correct that Dist. Idaho L. Rule 7.1 requires the responding party to file a separate statement of facts, the rule states also that a party must file a separate statement "of all material facts which the responding party *contends*

**MEMORANDUM DECISION AND ORDER - 4**

*are in dispute*." The Cities' failure to file a separate statement signals to this Court that the facts set forth by Plaintiffs are not disputed.[1]

## 2.     Plaintiffs' Standing

### A.     *Facts*

Plaintiff Monica Newman resides in Payette and has lived in the same place since December of 2014. However, during the hearing, counsel represented Newman has since moved from Payette and is no longer a resident of Payette (or for that matter Fruitland). She owns Archer, a mixed breed, neutered, male dog licensed by the City of Payette. Newman Decl. ¶ 4 (Dkt. 25-5.) Newman does not know Archer's breed composition, but she has heard comments from a number of people that Archer looks like a pit bull mix. Newman suffers from anxiety and fear when she takes Archer for walks, because a police officer might take him from her or arrest her because Archer looks like a pit bull.  There is no evidence in the record, however, that any city official from Payette has ever approached Newman about Archer or questioned his breed.

Newman also has decided not to foster or adopt dogs from bully breed rescue organizations because of Payette's pit bull ordinance, which causes her emotional distress as a dog lover.

Plaintiff Ruby Judine Malman lives in Fruitland and is Newman's sister. Malman owns two dogs, Willow and Charlie (Dkt. 34-1), a Chihuahua and a Dalmatian/Labrador mix. Malman licensed her two dogs with the City of Fruitland in August of 2014. Second

---

[1] The City of Fruitland submitted the affidavit of the City Clerk setting forth that Ruby Malman was not a resident of Fruitland because there are no utilities under her name, (Dkt. 26-1 at 3), but Malman adequately established she is a Fruitland resident by submitting a copy of her driver's' license and a cable bill addressed to her residence in Fruitland; there is therefore no dispute of fact with regard to Malman's residence. (*See* Dkt. 34-1.)

Malman Decl. ¶3 (Dkt. 34-1.) Malman does not own a pit bull, and when she wanted a puppy in 2014, she decided to adopt a breed other than a pit bull or pit bull mix because of the Fruitland ordinance, although she states that she "would like to adopt a dog who could be found (by what standard I am uncertain) to meet the definitions of 'vicious dog' or 'pit bull.'"

Newman's and Malman's sibling relationship has been affected by the Fruitland pit bull ordinance. Newman used to bring Archer with her to visit Malman, but no longer does so because she fears Fruitland's pit pull ordinance might result in Archer being seized from her. Newman complains that the cities' pit bull ordinances are vague and have caused a chilling effect upon her ability to select a puppy of her choosing.

Plaintiff Matthew Douglas has been subjected to enforcement of the city of Payette's pit bull ordinance on two occasions. First, his female dog and puppies were subject to seizure in 2007 as "pit bulls" unless Douglas removed the dog and her puppies from Payette's city limits. At that time, Douglas delivered the dog and her puppies to the Idaho Humane Society, and surrendered them all. Now, Douglas owns Ratchet, his pet that Payette declared is a "pit bull." Douglas was told on July 7, 2014, to either remove Ratchet from the Payette city limits or he would be subject to criminal prosecution.

Douglas was criminally cited for harboring a vicious dog in violation of Payette Municipal Code § 6.08.070 and misdemeanor charges were filed against him on July 10, 2014. Prior to the July 25, 2014 arraignment hearing, a police officer, without first obtaining a warrant or giving Douglas his Miranda warnings, obtained a DNA swab from Ratchet's mouth. On or about August 1, 2014, Officer Silva received Wisdom Panel 2.0

**MEMORANDUM DECISION AND ORDER  - 6**

results from MARS Veterinary, claiming that a dog with the name "Unk" did "not yield enough high quality DNA to meet our minimum standards," and the sample "failed."

During the pretrial conference, the judge, the prosecutor, and Douglas appeared in chambers. The prosecutor showed Judge Jackson a picture of Ratchet taken on July 7, 2014. Apparently, the photograph left Judge Jackson with some doubts about Ratchet's breed history. Upon an oral request by the prosecutor, Judge Jackson ordered that Douglas submit Ratchet to a second DNA test, and the pretrial hearing was continued to October 29, 2014. A DNA sample was then obtained from Ratchet, which came back with no identifier other than "Unk", but this time described a mixed-breed dog with American Staffordshire Terrier genetic composition.

On October 29, 2014, Douglas appeared for his pretrial hearing. He was informed by the prosecutor[2] that, if Ratchet was removed voluntarily from the city of Payette, the criminal charges would be dismissed. The court set a status conference on December 23, 2014, at which Douglas was to present proof that Ratchet was no longer in the city limits. Douglas was told he could verbally inform the prosecutor that Ratchet was no longer in the city, which he did. Accordingly, Douglas did not believe he needed to appear for any future court hearings. After Douglas failed to appear for the status conference on December 23, 2014, and the trial on December 24, 2014, a bench warrant was issued for Douglas's arrest.

On January 20, 2015, officers arrested Douglas. On January 27, 2015, the prosecutor moved to dismiss the charges, which motion was granted. Douglas lost his job

---

[2] Bert Osborn, the attorney representing the cities here, was the prosecutor in the criminal case against Douglas.

**MEMORANDUM DECISION AND ORDER - 7**

shortly after the arrest, and Ratchet is still not home with Douglas and his family. Douglas wants to bring Ratchet home to Payette.

Article III of the Constitution confines federal courts to adjudicating actual "cases" or "controversies." V*alley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc*., 454 U.S. 464, 471 (1982). To satisfy Article III's "case" and "controversy" requirement, a plaintiff must have standing to bring the complaint, and the claims asserted must be "ripe for review." S*ee, e.g.,  DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).

### B.        Article III Standing

Article III standing "focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated." *Flast v. Cohen*, 392 U.S. 83, 99 (1968). To establish standing under Article III, the party in question must prove: (1) an injury-in-fact that is concrete and particularized, and actual or imminent; (2) a fairly traceable causal connection between the injury alleged and the conduct in dispute; and (3) a sufficient likelihood that the relief sought will redress the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

"A plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979). For example, a party has standing to challenge a statute that subjects him to a threat of prosecution. *Planned Parenthood of Idaho v. Wasden*, 376 F.3d 908, 916–17 (9th Cir. 2004). But even when a regulation is not directed at a party, it can be "an object" of government regulation so

long as the "injury alleged, in addition to being actual and personal," is caused by the challenged action and is "likely to be redressed by a favorable decision." *Los Angeles Cty. Bar Ass'n v. Eu*, 979 F.2d 697, 701 (9th Cir. 1992) (internal quotation marks omitted). A party seeking to invoke the court's powers must demonstrate that more than "speculative inferences" connect the injury to the challenged action. *Id*.

The injury in fact requirement is satisfied differently depending upon whether the plaintiff seeks prospective or retrospective relief. *Grider v. City and County of Denver*, 958 F.Supp.2d 1262, 1266 (D. Colo. 2013) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983)). Prospective relief requires a plaintiff to suffer a continuing injury or be under a real and immediate threat of being injured in the future; the threatened injury must be "certainly impending and not merely speculative." *Id.*; *see also Friends of the Earth, Inc. v. Laidlaw Envl. Servs., Inc.* 528 U.S. 167, 190 (2000). However, it is insufficient to allege a mere "hypothetical intent to violate the law." *Erickson v. City of Leavenworth*, 782 F.Supp.2d 1163, 1169 (E.D. Wash. 2011); *see also Martin v. City of Boise*, No. 1:09-cv-540-REB, slip. Op. at 11 (D. Idaho Sept. 28, 2015) (finding plaintiff lacked standing when there was no allegation beyond "supposition built on speculation" that he will violate the ordinance.). A plaintiff seeking retrospective relief, in contrast, satisfies the injury in fact requirement if he suffered a past injury that is concrete and particularized. *Id.*; *see also Lyons*, 461 U.S. at 102.

## C.     *Monica Newman Lacks Standing*

At the time of filing the complaint, Monica Newman lived in Payette with her mixed breed dog, Archer, who is licensed by the City of Payette. She makes no allegation

of past injury as a result of enforcement of the Payette or Fruitland pit bull ordinance. She does not know if her dog is a pit bull, and in fact, her dog is licensed, so she is in compliance with the dog licensing requirements for the City of Payette. She makes no allegation that she suffered any past injury traceable to Payette. And, Archer's dog license is presumptive proof that Newman is not subject to any future injury. Payette issued Archer a dog license. In other words, Newman is entitled to live in Payette with Archer and without interruption from the City of Payette, provided she renews Archer's dog license each year.

Next, Newman's nebulous "wish" to foster or adopt a dog "who could be found" to be a pit bull is not a concrete, particularized injury meeting the requirements for Article III standing. *See Erickson*, 782 F.Supp.2d at 1169 (finding plaintiff lacked standing where there was no concrete plan to violate the law; plaintiff's "musings do not provide the concrete details contemplated by the Ninth Circuit…") and *Martin*, slip. Op. at 11. Newman has not begun the adoption process, identified a particular dog, or alleged that she intends to (and has taken steps to do so) foster pit bull dogs. Newman's allegations are mere dreams to someday, possibly, adopt a dog, which may or may not be a dog with pit bull lineage. Her allegations do not rise beyond mere speculation, which is insufficient to establish standing.

Finally, Newman's claim she has been forced to discontinue taking Archer with her to visit her sister in Fruitland is similarly insufficient to establish either a past or future injury attributable to Fruitland. Although Newman alleges she intends to travel to Fruitland to visit her sister and she is scared to take Archer along with her, Archer can

**MEMORANDUM DECISION AND ORDER  - 10**

either be left at home, or she can establish that Archer is a licensed dog from the city of Payette. Under the terms of the Fruitland ordinance, Newman is in compliance because she has obtained a license for her dog. *See* Fruitland, Idaho City Code § 5-2A-2(A)(1), (2). Thus, the conduct of bringing her licensed dog with her to Fruitland is not conduct expressly proscribed by the ordinance. *See Martin*, slip op. at 12 (to establish standing, plaintiff must demonstrate an intent to engage in conduct affected with a constitutional interest, but proscribed by statute). Here, because Newman's conduct is permitted by the ordinance, there is no realistic danger of her sustaining a direct injury as a result of the ordinance's enforcement. *Id.*[3]

Even if Fruitland's dog licensing ordinance would not recognize a dog license obtained in another jurisdiction, the mere fact Newman must keep Archer hidden while visiting her sister in Fruitland does not establish standing. *See Grider*, 958 F.Supp.2d at 1269 (finding plaintiff lacked standing when the only injury alleged was that he had to keep his dog hidden while visiting the defendant city, which had enacted a pit bull ordinance).

Accordingly, Newman lacks standing to seek relief against either the City of Payette or the City of Fruitland.

---

[3] At the hearing, Plaintiffs argued that no city official determines the breed of a dog when the dog owner applies for a license, and there is no indication that either city would defer to the other jurisdiction's licensing of the dog as something other than a pit bull. However, the Fruitland ordinance simply indicates the dog, whether pit bull or any other breed, must be licensed. Fruitland, Idaho City Code § 5-2A-2(A)(1), (2). Given Payette and Fruitland each have similar ordinances, the Court sees no reason why Fruitland would not simply defer to the license given to the dog by the city of Payette. Further, there is no evidence in the record that any official in Fruitland has to date questioned Newman about Archer's lineage.

MEMORANDUM DECISION AND ORDER  - 11

**D.**    *Ruby Judine Malman Lacks Standing*

The only past injury Malman claims to have suffered is choosing not to acquire a dog that could be identified as a pit bull, due to the Fruitland pit bull ordinance. Instead, Malman owns two dogs, a Chihuahua and a Dalmatian/Labrador mix. Malman's allegation that she acquired a different breed of dog other than a pit bull or pit bull mix is insufficient to allege a past injury attributable to Fruitland. She makes no allegation that Fruitland affirmatively denied her approval to keep a particular dog. Nor does she allege how the Fruitland ordinance actually injured her. Malman instead acquired two dogs that presumably satisfy Malman's desire to own animal companions. *See Grider*, 958 F.Supp.2d at 1266 (finding that directive to move from Denver with his dog did not allege a sufficient past injury attributable to Denver).

And, like her sister, Malman's desire to someday adopt a dog that could be a pit bull or pit bull mix does not allege a credible threat of future prosecution under the Fruitland pit bull ordinance. Malman's allegations against Payette are even more tenuous, because she alleges only that she would "want to bring the [dog] [that she does not have and does not specify when she wants to acquire] to the city of Payette to visit" Newman and Archer. Malman's fear of watching Archer for her sister is similarly insufficient because Archer has a dog license, and as explained, complies with the Fruitland ordinance. *See* Fruitland, Idaho City Code, § 5-2A-2(A)(1),(2). Alternatively, the rationale of *Grider*, 958 F.Supp.2d at 1269, applies.

Malman lacks standing to seek relief against either the City of Payette or the City of Fruitland.

**MEMORANDUM DECISION AND ORDER - 12**

### E.     *Matthew Keith Douglas Has Standing to Sue the City of Payette*

Douglas never makes any allegation that he suffered a past injury attributable to the City of Fruitland, or any concrete and particularized risk of past or future injury with respect to  Fruitland. He alleges he traveled with Ratchet through Fruitland, but, despite the Fruitland ordinance, Douglas was never interrupted in his journey through Fruitland while traveling with Ratchet. A nebulous fear, or even a need to keep his dog hidden while passing through Fruitland, does not establish a concrete and particularized past injury, nor any immediate threat of future injury. *Grider*, 958 F.Supp.2d at 1269 (finding plaintiff lacked standing when he kept his dog hidden while traveling through county with pit bull ordinance). Douglas therefore lacks standing to seek relief against the City of Fruitland.

But, with respect to Payette, Douglas alleges Ratchet was subject to seizure by animal control officers employed by the City of Payette pursuant to the Payette pit bull ordinance. Douglas has standing to seek both retrospective relief from the injuries already caused, because his dog was seized and he was charged with a criminal violation of the Payette ordinance, and prospective relief because he wants to bring Ratchet back home to live with him and his family.[4] Douglas has alleged an injury in fact supporting retrospective relief, which injury was caused by the ordinance: but for the ordinance, Ratchet would not have been seized and Douglas would not have been criminally charged and prosecuted. *Dias v. City and County of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009).

---

[4] Ratchet is currently in a foster home although Douglas has not indicated specifics and counsel for the cities argued, without any support in the record, that Douglas no longer owns Ratchet.  This issue is not before the Court presently.

**MEMORANDUM DECISION AND ORDER  - 13**

To elaborate further regarding Douglas's claim for prospective relief, the Ordinance does not appear to allow Douglas to keep Ratchet within the city of Payette. Although the first section of the ordinance states it would be unlawful for any person to own or keep a pit bull within the city limits "prior to the issuance of a city of Payette dog license," PMC 6.08.020(A)(2), the actual licensing portion of the ordinance restricts a dog owner's ability to obtain a pit bull license unless the license was first issued prior to June 15, 2006. PMC 6.08.102(A)(1)(e). Ratchet, having been found to be a pit bull and presumably not licensed prior to June 15, 2006, is not  welcome in the city limits of Payette. Douglas would be subject to further civil enforcement or criminal prosecution and penalties if he brings Ratchet home.

Because the Court finds Douglas has standing to pursue his claims against the City of Payette, the Court will continue its discussion of the constitutional claims against Payette that are at issue with Plaintiffs' pending motion for partial summary judgment.

**3.      Constitutional Claims**

     **A.      *Facts – The Payette Pit Bull Ordinance***

The City of Payette enacted a vicious dog ordinance in 2006. Section 6.08.070 of the Payette Municipal Code ("PMC") provides that it 'shall be unlawful for any person to keep or harbor a fierce or vicious animal or dog without first complying with the terms of this chapter." A "vicious dog" is defined as

> Any dog that is an American pit bull, American pit bull terrier, American Staffordshire terrier, Staffordshire bull terrier, English pit bull, English pit bull terrier, English Staffordshire terrier, pit bull, Presa Canario, Canary Island dog, Cane Corso, Russian wolfhound, wolf hybrid, mountain dog or any dog exhibiting those distinguishing characteristics which substantially

**MEMORANDUM DECISION AND ORDER  - 14**

conform to the standards established by the American Kennel Club or United Kennel Club for any of the above breeds, if any, or any mixed breed of dog which contains as an element of its breeding the breed of American pit bull, American pit bull terrier, pit bull, American Staffordshire terrier, Staffordshire bull terrier, English pit bull, English pit bull terrier, English Staffordshire terrier, Presa Canario, Canary Island dog, Cane Corso, Russian wolfhound, mountain dog or wolf hybrid, or any dog which has sufficient characteristics so as to be identifiable as partially of the breed of American pit bull terrier, American Staffordshire terrier, pit bull, English pit bull, English pit bull terrier, English Staffordshire terrier, Staffordshire bull terrier, Presa Canario, Canary Island Dog, Cane Corso, Russian wolfhound, wolf hybrid or mountain dog."

PMC 6.08.010. A "pit bull" is defined as:

Any dog that is an American pit bull terrier, American Staffordshire terrier, Staffordshire bull terrier, English pit bull, English Staffordshire terrier, or any dog exhibiting those distinguishing characteristics which substantially conform to the standards established by the American Kennel Club or United Kennel Club for any of the above breeds, or any mixed breed of dog which contains as an element of its breeding the breed of American pit bull terrier, American Staffordshire terrier, Staffordshire bull terrier, English pit bull, English Staffordshire terrier, or having characteristics so as to be identifiable as partially of the breed of American pit bull, English pit bull, bull terrier, American Staffordshire terrier, Staffordshire bull terrier. The AKC and UKC standards for the above breeds are on file in the office of the city clerk of the city of Payette.

PMC 6.08.010. Accordingly, any pit bull is by definition also a dangerous dog under the Payette ordinance.

The Payette Municipal Code has both civil and criminal components. As a civil measure, the ordinance allows law enforcement officials to impound any pit bull found within the city limits of Payette. PMC 6.08.050 (allowing any police officer to enter the premises of any person to take possession of any unlicensed or licensed "vicious dogs" if the dog is in plain view of the officer); PMC 6.08.102(B) (authorizing the chief of police to immediately impound or cause to be impounded any pit bull found in the city of

Payette which does not meet the requirements in the ordinance); PMC 6.08.060(G) (allowing any police offer to seize and impound any vicious animal whose owner fails to comply with the chapter). In the motion before the Court, Douglas contends three particular provisions of the ordinance are unconstitutional for violating constitutional requirements of notice and opportunity to be heard-- PMC 6.08.102(C), (D), and (E). Each will be discussed in turn.

PMC 6.08.102(C) provides for a post seizure hearing if a dog is seized pursuant to the ordinance. It is incumbent upon the dog's owner to file a written petition with the chief of police for a hearing concerning the classification of his or her dog as a pit bull no later than seven days after impoundment. PMC 6.08.102(C). Once the petition is received, the chief of police must issue a notice of hearing date by mail notifying the dog's owner of the date of the hearing. *Id.* However, if the chief of police receives no written request for a hearing from the dog owner within seven days, the pit bull "shall be destroyed" without further notice. *Id.*

The post s-seizure hearing procedures are set forth in subsection 6.08.102(D). The hearing is held before the chief of police or his or her designated hearing officer. PMC 6.08.102(D). "Any facts which the petitioner wishes to be considered shall be submitted under oath or affirmation either in writing or orally at the hearing. The petitioner shall bear the risk of nonpersuasion. The chief of police or hearing officer shall make a final determination whether the dog is a 'pit bull' as defined in section 6.08.010 of this chapter. Such final determination shall be considered a final order of the chief of police subject only to judicial review." *Id.*

**MEMORANDUM DECISION AND ORDER  - 16**

If, as a result of the hearing, the dog is found to be a pit bull, "it shall be destroyed" unless the owner removes the dog from the city limits of Payette and provides proof of having done so. PMC 6.08.102(E). If the dog is found not to be a pit bull, the dog will be released to the owner. *Id.* The above procedures do not apply if the dog was impounded as a result of an attack or bite, and the owner is not entitled to a hearing in such cases. In these cases, the dog may be euthanized without any post-seizure notice or hearing. *Id.*

Violating the ordinance also is a criminal offense. PMC 6.08.110(A). A violation of the ordinance "shall be a misdemeanor punishable by fine and/or imprisonment up to, but not exceeding, the maximum penalties set forth in Idaho Code sections 18-113 and 50-302." Additionally, any dog prohibited by the ordinance, or any dog that attacks a human or any other domestic animal, "may be ordered destroyed when, in the court's judgment, such dog represents a continuing threat of harm" to humans or other domestic animals. *Id.*

The ordinance considers it unlawful for any person to "own, possess, keep, exercise control over, maintain, harbor, transport, buy or sell a pit bull" within the city of Payette unless the person complies with the licensing requirements applicable to pit bulls and meets several other requirements. PMC 6.08.102(A)(1). The licensing section provides that "[t]he owner of any pit bull which had been licensed pursuant to this chapter on or before the date of publication of the ordinance codified herein shall be allowed to keep such pit bull within the city upon compliance with the licensing and insurance requirements set forth herein, *but only if the owner applies for and receives an*

*annual pit bull license on or before June 15, 2006.*" PMC 6.08.102(A)(1)(e) (emphasis added).

### B. *Douglas's Constitutional Claims Against the City of Payette*

Douglas claims the Payette pit bull ordinance sections requiring seizure or destruction of dogs found to be pit bulls violates procedural due process rights. Notably, Douglas states his motion does not contest the ordinance under substantive due process principles. Pls.' Reply at 4 (Dkt. 35.) The City of Payette argues Plaintiffs do not assert a constitutionally protected interest, because the city had a reasonable basis upon which to enact the ordinance. However, Douglas does not move for summary judgment here on substantive due process grounds that the ordinance as a whole is unconstitutional.[5] Rather, Douglas contests three discrete portions of the ordinance he alleges do not afford citizens like himself procedural due process under the civil enforcement provisions of the ordinance.[6] Therefore, Payette's argument that the ordinance bears a rational relationship to a legitimate government interest and its evidentiary support for those arguments are not relevant for purposes of resolving this motion.

Rather, Douglas contends that PMC 6.08.102(C), (D) and (E) suffer from constitutional infirmities because the ordinance's civil enforcement provisions: (1) lack a notice provision once the dog is impounded; (2) do not provide a meaningful opportunity to be heard due to a flawed burden of proof, unidentified standard of proof, and lack of

---

[5] Sections VIII, IX, XI, and XII assert claims against the cities of Payette and Fruitland based upon substantive due process grounds that the ordinances are not rationally related to a legitimate purpose. However, the motion before the Court does not include a request for judgment as a matter of law regarding these claims.

[6] Because Douglas intends to bring Ratchet home, and Ratchet was seized once before, these provisions may be enforced against Douglas.

MEMORANDUM DECISION AND ORDER - 18

subpoena powers; and (3) contain disparate rules of testimony.[7] In the motion presently

before the Court, Douglas seeks injunctive relief and declaratory judgment finding

sections 6.08.102(C), (D) and (E) of the Payette Municipal Code unconstitutional under

the Fourteenth Amendment to the United States Constitution, and under Article 1,

Sections 2 and 13, of the Idaho State Constitution.[8]

Section 1983 of Title 42 of the United States Code provides in part: "Every person

who, under color of any statute, ordinance, regulation, custom, or usage, of any State ...

subjects ... any citizen of the United States ... to the deprivation of any rights, privileges,

or immunities secured by the Constitution and laws, shall be liable to the party injured...."

42 U.S.C. § 1983. To impose liability under § 1983, a plaintiff must prove a violation of a

federal statute or the United States Constitution. The Fourteenth Amendment to the

United States Constitution provides that no state shall "deprive any person of life, liberty,

or property, without due process of law." U.S. Const. amend. XIV, § 1.

Dogs are considered "property" under Idaho law. Idaho Code § 25-2807. Due

process requires law enforcement "to take reasonable steps to give notice that the

property has been taken so the owner can pursue available remedies for its return." *Lavan

v. City of Los Angeles*, 693 F.3d 1022, 1032 (9th Cir. 2012) (quoting *City of West Covina

v. Perkins*, 525 U.S. 234, 240 (1999)). Due process must be both meaningful, and

appropriate to the nature of the case. *Harris By and Through Ramseyer v. Blodgett*, 853

F.Supp. 1239, 1286 (W.D. Wash. 1994) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552

---

[7] In his motion and the amended complaint, Douglas seeks relief ostensibly with regard to 6.08.102(E) in addition to subsections (C) and (D). However, sections 1, 2, and 3 of his brief discuss only 6.08.102(C) and (D).
[8] To the extent the Amended Complaint asks for other relief and contest other portions of the ordinance as unconstitutional, those arguments are not presently before the Court.

**MEMORANDUM DECISION AND ORDER - 19**

(1965) and *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950). In other words, the process due depends upon the particular situation.

The Court begins with the presumption that the ordinance at issue is constitutional, and will determine if the ordinance can be interpreted to satisfy the Constitution. *ACLU of Idaho v. City of Boise*, 998 F.Supp.2d 908, 913 (D. Idaho 2014). "It is a 'well-established principle that statutes will be interpreted to avoid constitutional difficulties.'" *Berger v. City of Seattle*, 569 F.3d 1029, 1046 (9th Cir. 2009) (quoting *Frisby v. Schultz*, 487 U.S. 474, 483 (1988)). When reviewing legislation, the Court's task is to give meaning to the words used, and to avoid constructions that render words meaningless. *U.S. v. LSL Biotechnologies*, 379 F.3d 672, 689 (9th Cir. 2004). In doing so, the Court is permitted to construe an ambiguous local ordinance narrowly, and then to judge the constitutionality of the ordinance as construed. *Ctr. For Bio–Ethical Reform, Inc. v. L.A. County Sheriff Dep't*, 533 F.3d 780, 791–98 (9th Cir.2008).

### (1)   *PMC 6.08.102(C) - Notice*

Douglas argues section 6.08.102(C) of Payette's ordinance is constitutionally infirm because it does not require the city to inform the dog owner of his or her right to request a hearing within seven days, and instead places the burden upon the dog owner to request one.

The Ninth Circuit stated in *Lavan* that "[t]he government may not take property like a thief in the night; rather, it must announce its intentions and give the property owner a chance to argue against the taking." *Lavan*, 693 F.3d at 1031. *Clement v. city of Glendale*, 518 F.3d 1090, 1093 (9th Cir.2008). In *Lavan*, the court found the city's utter

**MEMORANDUM DECISION AND ORDER  - 20**

failure to provide any notice or opportunity to be heard before it seized and destroyed homeless persons' property left unattended on the sidewalk violated procedural due process safeguards. *Id.*

Here, in contrast, the Payette ordinance provides a right to request a hearing, but a corresponding notice provision is not readily apparent, as in other sections of the Payette Municipal Code. For example, if a livestock animal is seized when found running at large, the ordinance requires a police officer who has seized and impounded the animal to "post, at three (3) conspicuous places in the city and for not less than ten (10) days, a written notice" containing a description of the animal, the date of the seizure, and the date of the sale so that the owner may reclaim the animal. PMC §§ 6.04.020; 6.04.050. Under the ordinance provisions applicable to dogs, no posting, ticketing or notice requirement exists to notify the owner that he or she may request a hearing, and the time limits within which to do so.

Yet, the taking of the animal itself provides some measure of notice to the affected pet owner. The dog is gone, either taken from the owner by law enforcement, or missing from the owner's premises. PMC § 6.08.050(A), (D).[9] And what dog owner, other than someone intent on abandoning his or her pet, would not look for his dog?[10] Further, Idaho Code requires notice be given to owners missing their dog. Idaho Code § 25-2804

---

[9] The Court assumes that most pet owners, when walking their dogs, would have the dog on a leash or under voice control. Thus, if the dog is taken while the pet owner is out for a walk, the owner would be on notice. Alternatively, if the dog is seized from the owner's private property, again, the owner can reasonably assume Fido's absence from the yard means he is roaming about the neighborhood, or he was found and impounded by animal control. The owner can then readily contact animal control or the local animal shelter to see if his pet wound up there.

[10] The Court is reminded of the children's song, "Where, Oh Where Has My Little Dog Gone," the tale of a distraught dog owner looking all over town and asking the "man over there" where his little dog, "with his ears cut short and his tail cut long," has gone.

**MEMORANDUM DECISION AND ORDER - 21**

specifies the sheriff must notify the owner of any dog seized at large before destroying the dog if the owner can be found. If a seized dog had no color and tags, the sheriff must make a "reasonable effort" to locate the owner. If the dog seized does have a collar and tags, the sheriff "shall notify the owner, if known," that the dog was seized and allow the owner to recover possession of the dog.

Douglas fails to reference Idaho Code § 25-2804, and does not explain why the statute does not apply here in the absence of a more particular notice provision in the Payette Municipal Code. During the hearing before the Court, Douglas argued that Idaho Code § 25-2804 is restricted in its application to the sheriff of a county that has not enacted a dog license law. While it is true the statute indicates such, the restrictive provision applies to the sheriff's ability and duty to impound the dog, not to the notice provisions.[11] In other words, the sheriff is not responsible to seize and impound a dog found within a municipality or county enforcing a dog license law. Other officials are presumably delegated that responsibility. But the notice provision, which appears later in the statutory text, contains no such restriction. The Court finds it reasonable to conclude that, absent contrary language in the ordinance, Idaho Code § 25-2804 applies to Payette officials who have impounded a dog. Reasonable efforts to locate the owner of a dog with or without identifying tags must be made.[12]

---

[11] The statute states: "it shall be the duty of the sheriff of the county to seize and impound any and all dogs, other than those [dogs] located in a municipality within said county which has enacted and is enforcing a dog license law, at large without a collar with such license tag or disc as prescribed in section 25-2803, Idaho Code."

[12] At the hearing, counsel for the cities represented that city officials do take steps to locate the owner of a dog that has been impounded.

**MEMORANDUM DECISION AND ORDER  - 22**

Presuming the application of Idaho Code § 25-2804, the Court finds nothing inherently problematic, from a constitutional standpoint, about placing the burden of requesting a hearing upon the dog owner. Idaho law contains other examples where the owner of impounded property, if the owner would like it returned, must request a hearing upon receiving notice that property was seized. For instance, if a vehicle used in transporting stolen livestock is impounded, it is incumbent upon the registered owner to "commence an action in prohibition or injunction" against the sheriff to restrain any sale of the vehicle. Idaho Code § 25-1171. Similarly, if an owner's vehicle is towed and impounded, the towing company must provide the vehicle's registered owner with the opportunity for a post-storage hearing. Idaho Code § 49-1805(1). However, it is incumbent upon the registered owner "to request" a post storage hearing. Idaho Code § 49-1805(3).

The Court therefore finds no constitutional infirmity with the procedure employed by Payette, provided Payette adheres to Idaho Code § 25-2804 and provides the requisite notice to the owner that his or her dog has been seized, and the opportunity to request a hearing. *See, e.g.*, *Garcia v. Village of Tijeras*, 767 P.2d 355, 361 (N.M. Ct. App. 1988) (finding that where dog impoundment ordinance provided a hearing, fact that ordinance did not expressly set out the procedures to be followed with respect to notice of the hearing and an owner's right to appear was not fatal under due process standards). Douglas has therefore failed to carry his burden on the record before the Court that PCM § 6.08.102(C), read in conjunction with Idaho Code § 25-2804, is unconstitutional. *See, e.g., Colorado Dog Fanciers, Inc. v. City and County of Denver*, 820 P.2d 644, 647

**MEMORANDUM DECISION AND ORDER - 23**

(Colo. 1991) (to save an ordinance from constitutional infirmities, the trial court read into the statute a notice requirement; appellate court affirmed).

### (2)     *PMC 6.08.102(D) – Burden of Proof*

Douglas contends Section 6.08.102(D) is unconstitutional because, at a civil enforcement hearing, the dog owner "bears the risk of nonpersuasion" at the hearing when the owner disputes the dog's classification as a pit bull under the ordinance. Douglas argues the dog owner is presumed "guilty" until he proves his dog is not a pit bull, and he risks criminal prosecution based upon the findings at the civil enforcement hearing.

The only case the Court finds on all fours with the case at bar, and relied upon by Douglas, is *Colorado Dog Fanciers, Inc. v. City and County of Denver*, 820 P.2d 644 (Colo. 1991). *See also Am. Canine Foundation v. City of Aurora, Colo.*, No. 06–cv–01510–WYD–BNB, 2008 WL 2229943 (D. Colo. May 28, 2008) (citing *Colorado Dog Fanciers* with approval). In *Colorado Dog Fanciers*, the court addressed constitutional challenges to Denver's enactment of the "Pit bulls Prohibited" ordinance. The ordinance became effective on August 7, 1989, and made it unlawful for any person to "own, possess, keep, exercise control over, maintain, harbor, transport, or sell within the city any pit bull." *Id*., 820 P.2d at 646 (quoting § 8–55(a)). The ordinance permitted an owner of a previously licensed pit bull to keep the dog only if the owner (1) annually renews a "pit bull license", (2) proves that the dog has been spayed or neutered and has been vaccinated against rabies, (3) keeps the dog confined or securely leashed and muzzled, and (4) maintains $100,000 in liability insurance. *Id*. The dog owners in *Colorado Dog*

*Fanciers* claimed that, under the Fifth and Fourteenth Amendments to the United States Constitution, the ordinance, both facially and as applied to them, violated their rights to procedural and substantive due process and equal protection, was unconstitutionally vague, and constituted a taking of private property. *Id*. at 647.

The Colorado ordinance is strikingly similar to Payette's ordinance. In Colorado, if the dog's owner disputes the classification of the dog as a pit bull, and requests a hearing, the dog owner "bears the risk of nonpersuasion." *Id.* at 647. The trial court found this provision of the ordinance unconstitutional, and severed the language from the rest of the ordinance. *Id.* at 648. On appeal to the Colorado Supreme Court, the court considered the propriety of the trial court's solution. The appellate court found that the burden of proof, synonymous there with the "risk of nonpersuasion," fails to apprise dog owners "of the quantum of evidence necessary to prevail at [the] hearing, [and] it may encourage arbitrary enforcement." *Id.* The ordinance was therefore constitutionally infirm, and the court upheld the trial court's severance of the offending provision. *Id.* at 648. The court was then left with an ordinance that "implicates constitutional due process values since it lacks any burden of proof." *Id.* at 649. Rather than striking down the ordinance in its entirety, the court held that "the city bears the burden of proof of pit bull status by a preponderance of the evidence" at a civil regulatory hearing.

Here, the Court finds the Payette ordinance suffers from the same infirmity as the one at issue in *Colorado Dog Fanciers*. The language is identical. The Colorado trial court, and its supreme court, both found the language requiring the dog owner to bear the risk of nonpersuasion at a dog impoundment hearing to be constitutionally infirm. The

**MEMORANDUM DECISION AND ORDER - 25**

Court here finds *Colorado Dog Fanciers* persuasive, and finds PMC 6.08.102(D) does not comport with constitutional standards of due process. Further, as in *Colorado Dog Fanciers*, the Court holds that a pit bull determination made for regulatory purposes, where the applicable burden of proof is by a preponderance of the evidence, may not be used to support a later criminal charge. *Colorado Dog Fanciers*, 820 P.2d at 649.

The Colorado court determined the offending portion could be severed from the ordinance. Here, however, Payette's provision regarding constitutionality appears more limited. PMC § 1.01.100 provides that, "if any section, subsection, sentence, clause or phrase of this code is for any reason held to be invalid or unconstitutional, such decision shall not affect the validity of the remaining portions of this code." It does not appear the ordinance allows severance. Accordingly, the Court holds that PMC 6.08.102(D) requiring the dog owner to bear the "risk of nonpersuasion" does not satisfy due process standards.

### (3)     *PMC 6.08.102(D) – Rules of Testimony*

Douglas argues PMC 6.08.102(D) provides disparate evidentiary standards during a dog impoundment hearing. He cites the ordinance's requirement that facts the petitioner wishes to be considered at the hearing "shall be submitted under oath or affirmation either in writing or orally at the hearing," and the corresponding lack of any such requirement upon the city.

Again while looking to *Colorado Dog Fanciers*, the Court finds the provision lacks basic guarantees of due process. The lack of a corresponding burden to present proof under oath on the part of the government does not satisfy due process standards.

**MEMORANDUM DECISION AND ORDER  - 26**

### (4)   *PMC 6.08.102(E) – No Hearing*

Section 6.08.102(E) indicates the pit bull owner is not entitled to a hearing in any instances where the dog was impounded as the immediate result of an attack or bite. In such cases, the dog "shall be handled and the procedures governed by this chapter." Subsection (E) was mentioned in the amended complaint, but no argument or authority was presented in the motion in support of partial summary judgment.[13]

The Court finds, however, that the lack of any provision for a hearing when a dog is impounded due to an attack or bite violates standards of procedural due process.[14] To order the destruction of a dog, even one that has attacked or bitten someone, procedural safeguards require satisfactory proof that the dog is dangerous, vicious, or in the habit of biting or attacking other persons or other dogs or animals. *See, e.g., Brown v. Muhlenberg Township*, 269 F.3d 205, 213 (3rd Cir. 2001) (state must generally provide pre-deprivation process unless pre-deprivation procedures are impracticable); *State v. Blatt*, 774 S.E. 2d 570, 578 (W. Va. 2015) (finding statute required court determination that the dog was dangerous, vicious, or in the habit of attacking persons before destruction of the dog could occur).

---

[13] Given the Court's conclusion that this provision relates also to the alleged lack of procedural due process, it falls within the reasonable scope of Douglas's challenges to the ordinance despite the fact Ratchet was not impounded for biting or attacking another person or dog.

[14] Emergency circumstances are an exception. If law enforcement confronts a dog in the process of attacking someone, and the dog is killed during an attempt to save human life or in self-defense, no notice or opportunity to be heard is required. *See, e.g., Hooper v. City of Detroit*, 50 F.Supp.2d a689, 694 (E.D. Mich. 1999) (finding no due process violation when officers shot and killed plaintiff's dog at the time it was in the process of attacking the officers).

**MEMORANDUM DECISION AND ORDER  - 27**

**CONCLUSION**

The lack of standing is fatal to Douglas's, Malman's, and Newman's claims against the city of Fruitland contained in Sections XI, XII, XIII of the Second Amended Complaint. So, too, fall the claims asserted by Malman and Newman against the city of Payette in Sections VIII, IX, X of the Second Amended Complaint. All that remains are Douglas's claim for prospective relief against the city of Payette under Section X and Sections VIII and IX, because he wants to bring Ratchet home, and there does not appear to be any provision for Douglas to obtain a dog license for Ratchet under Payette's dog licensing ordinance. Based upon the discussion above, Douglas's motion for partial summary judgment will be granted with respect to his procedural due process claims in Section X with regard to PMC § 6.08.102(C), (D), and (E).

Nonetheless, the Court wishes to encourage the parties to discuss resolution of this matter with the cities of Fruitland[15] and Payette. During the hearing, counsel for the cities indicated neither city has enforced the ordinances as written. In other words, law enforcement does not "take" dogs from their owners, and city officials do not routinely order destruction of dogs. Neither city has presented evidence to the Court indicating an identified concern about pit bulls and their owners in either city beyond a general notion that pit bulls are inherently dangerous as a breed. *E.g., Garcia*, 767 P.2d at 362-63 (noting the high percentage of pit bull dogs in relation to the village population, and that in light of this evidence, the village could properly determine that an ordinance banning

---

[15] There is currently a mediation scheduled for November 6, 2015. The Court encourages Fruitland to participate in the mediation despite the Court's ruling that, presently, no plaintiff has standing to sue the City of Fruitland.

**MEMORANDUM DECISION AND ORDER  - 28**

pit bulls was necessary for protection). The perception that the breed itself is inherently

dangerous has been subject to attack in recent years, and courts upholding pit bull bans as

reasonable have done so only if based upon a developed evidentiary record. *See, e.g.,*

*Dias v. City and County of Denver*, 567 F.3d 1169, 1184 (10th Cir. 2009) (discussing

cases).


## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1)     Plaintiffs' Motion for Partial Summary Judgment (Dkt. 25) is **GRANTED**

       **IN PART AND DENIED IN PART**.

2)     The claims asserted against the city of Payette by Plaintiffs Monica

       Newman and Ruby Judine Malman are **DISMISSED** without prejudice.

3)     All claims asserted by Plaintiffs against the city of Fruitland are

       **DISMISSED** without prejudice.


Dated: **October 19, 2015**

Honorable Candy W. Dale
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER  - 29**